## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEITH E. METZGER,** | : | |
| **Plaintiff** | : | |
| **v.** | : | **CIVIL NO. 3:CV-07-1191** |
| **MICHAEL J. ASTRUE,** | : | **(MUNLEY, D.J.)** |
| **Commissioner of** | | **(MANNION, M.J.)** |
| **Social Security** | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Disability Insurance Benefits, ("DIB"), and Supplemental Security Income, ("SSI"), under Titles II and XVI of the Social Security Act, ("Act").  42 U.S.C. §§ 401-433, 1381-1383f .

## I.    PROCEDURAL HISTORY.

The plaintiff protectively filed an application for DIB and SSI on January 3, 2005, alleging disability since September 19, 2004, due to back and leg pain and headaches.  (TR. 14, 45, 62-63, 70).  The state agency denied his claim initially and he filed a timely request for a hearing.  (TR. 30-35).  A hearing was held before an Administrative Law Judge, ("ALJ"), on July 19, 2006.  (TR. 271-98).  At the hearing, the plaintiff, represented by counsel, the plaintiff's wife, the plaintiff's pastor and a vocational expert, ("VE"), testified.  (TR. 271-98).  The plaintiff was denied benefits pursuant to the ALJ's decision of September 12, 2006.  (TR. 11-21).

The plaintiff requested review of the ALJ's decision. The Appeals

Council denied his request on May 4, 2007, thereby making the ALJ's decision the final decision of the Commissioner. (TR. 5-8). 42 U.S.C. § 405(g).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 10, 11 and 14).

## II.    STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For

purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.   DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (2004).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  *See* 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  *See* 20 C.F.R. § 404.1520.

In the instant matter, the ALJ proceeded through each step of the sequential evaluation process and concluded that the plaintiff was not disabled within the meaning of the Act. (TR. 14-21). At step one, the ALJ found that the plaintiff has not engaged in substantial gainful work activity at any time since his alleged disability onset date. (TR. 16). At step two, the ALJ concluded that the plaintiff's back disorder was a "severe" impairment within the meaning of the Regulations. (TR. 16-17). The ALJ also found that the plaintiff's mental impairment was not severe.  (TR. 17).  At step three, the ALJ

found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  (TR. 17).

At step four, the ALJ found that the plaintiff is capable of performing his past relevant work as a bartender.  (TR. 20).  The ALJ proceeded to step five and found that the plaintiff has the residual functional capacity, ("RFC"), to perform a range of light duty work.  (TR. 18-20).  Thus, the ALJ concluded that the plaintiff had not been under a disability, as defined in the Act, since September 19, 2004, his alleged disability onset date.  (TR. 20).

## IV.   BACKGROUND.

### A. Factual Background.

The plaintiff was born on January 14, 1966 and was forty (40) years old at the time of the ALJ's decision.  (TR. 274).  Therefore, he is considered a "younger person" under the Regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). The plaintiff has past relevant work experience as a pizza delivery driver, a laborer, a grave digger and a bartender.  (TR. 80-96, 274-75, 292-93).  He has an eighth grade education.  (TR. 274).

The plaintiff testified that he experiences panic attacks, back, leg and hip pain and numbness in his legs.  (TR. 275-77, 284).  He uses a TENS unit for his back pain, attends therapy, takes pain medication and underwent back surgery in 2000.[1]  (TR. 277-78, 284).  The pain medications help stabilize his pain, however they cause drowsiness.  (TR. 284-85).

The plaintiff testified that he can stand for ten to twenty minutes, sit for thirty minutes and lift up to twenty pounds.  (TR. 280).  During the day, the

---

[1]  The records indicate that the plaintiff underwent a microdiscectomy on May 11, 2001.  (TR. 124-27).

4

plaintiff watches his children, watches television and naps due to his trouble sleeping at night.  (TR. 280-81).  The plaintiff does not cook, clean or do yard work.  (TR. 281).  The plaintiff's wife and children do the household chores. (TR. 281).

The plaintiff testified that he talks to the Reverend of his church one to two times a week to help with his depression. (TR. 282-83). The plaintiff's Reverend, Mark Maister, testified at the hearing. (TR. 286-89). Reverend Maister testified that the plaintiff has difficulty walking and sitting through church services due to his pain. (TR. 286-87).

The plaintiff's wife, Pamela Metzger, also testified at the hearing.  (TR. 289-92). Mrs. Metzger stated that the plaintiff's physical and emotional conditions had deteriorated over the previous years.  (TR. 290-91).

Vocational expert, George Starosta, testified based on the *Dictionary of Occupational Titles*. (TR. 292-98). The VE classified the plaintiff as a younger individual with a limited education. (TR. 292). In response to the ALJ's hypothetical questions, the VE stated that the plaintiff would be able to perform work as an inspector, a guard and door keeper and a bench side packager. (TR. 294-95). The VE also stated that the plaintiff would not be able to engage in competitive employment if he had to lie down during the course of a regular workday or if he was unable to respond to usual work pressures. (TR. 296-97).

### B.  Medical Background.

The plaintiff underwent a microdiscectomy in May 2001 after he injured his back at work. (TR. 113, 120, 124-27). Paul S. Lin, M.D., performed the surgery and noted that the plaintiff did well afterwards. (TR. 120). The plaintiff was off work for two months after the surgery and he re-injured his back when he returned to work. (TR. 120).

On June 6, 2001, the plaintiff reported to Dr. Lin that he was doing pretty well, he had some intermittent discomfort and he was walking fourteen miles per day. (TR. 125). A straight leg raising test was negative[2] and his strength was equal. (TR. 125).

In July 2001, Dr. Lin stated that the plaintiff could continue working with a thirty pound restriction. (TR. 124). The plaintiff reported that he felt good performing light duty work. (TR. 124). Upon examination, a straight leg raising test was negative, the plaintiff's reflexes were symmetrical and his strength was good. (TR. 124).

In October 2001, the plaintiff reported some leg numbness and back pain. (TR. 123). Dr. Lin opined that the plaintiff was not yet capable of returning to full duty work, although an examination was benign, he was neurologically intact and no deficits were noted. (TR. 123).

In December 2001, Dr. Lin stated that the plaintiff should refrain from doing heavy lifting. (TR. 122). In January 2002, Dr. Lin noted that the plaintiff was let go from his job. (TR. 121). Dr. Lin explained that the plaintiff was not suffering from a work-related injury, but was suffering from post-laminectomy syndrome. (TR. 121-22). Dr. Lin stated that surgery would help the plaintiff, but he recommended that the plaintiff "live with the problem if the pain is tolerable." (TR. 121).

On November 19, 2004, the plaintiff was examined by Myra B. Tolan,

---

[2]

The straight leg-raising test, ("SLR"), is designed to detect nerve root pressure, tension, or irritation of the sciatic nerve. With the knee fully extended, the physician raises the involved leg from the examining table. A positive SLR test requires reproduction of pain at an elevation of less than 60 degrees. A positive SLR is the single most important sign of nerve root pressure produced by disc herniation. Andersson and McNeil, *Lumbar Spine Syndromes*, 78-79 (Springer-Verlag Wein, 1989).

M.D. (TR. 113-14). Dr. Tolan's impression was chronic low back pain, prior L5-S1 discectomy and hemilaminectomy and Grade 1 L5-S1 anterolisthesis. (TR. 114). Dr. Tolan noted that there was no evidence, on the MRI, of significant stenosis. The plaintiff requested a note to allow him to be off of work. (TR. 114). Dr. Tolan declined and instead chose to send him to a pain clinic. (TR. 114). Dr. Tolan opined that the plaintiff could perform his previous work as a delivery driver. (TR. 114).

In December 2004, Dr. Lin noted that the plaintiff was in good health overall, deep tendon reflexes were symmetrical, there was no evidence of motor deficit, a straight leg raising test was positive and his range of motion was limited. (TR. 120). Dr. Lin stated that he would complete forms supporting the plaintiff's disability for a limited period of time. (TR. 120). Dr. Lin noted that the plaintiff underwent an MRI on September 22, 2004 which revealed narrowed disc space at L-5, S-1. (TR. 120).

The plaintiff underwent a consultative examination with psychologist Jacqueline Sallade, Ed.D., on February 9, 2005. (TR. 204-212). Dr. Sallade diagnosed back pain and adjustment disorder with depressed mood. (TR. 206). Dr. Sallade completed a Medical Source Statement of the plaintiff's Ability to do Work-Related Activities (Mental) and found that the plaintiff had several limitations.  (TR. 211).

On February 11, 2005, Oliver Finch, M.D., a state-agency physician, completed a Physical RFC Assessment Form. (TR. 213-220). Dr. Finch found that the plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand, walk and sit for six hours in an eight-hour workday and push and/or pull unlimitedly. (TR. 214). Dr. Finch found that the plaintiff could frequently climb, balance, kneel and crouch, and occasionally stoop and crawl. (TR. 215).

Paul Lanunziata, Ed.D., a state-agency consultant, completed a

Psychiatric Review Technique Form on February 15, 2005.  (TR. 221-34).  Dr. Lanunziata evaluated the plaintiff's impairments pursuant to Listing 12.04, Affective Disorders, and found that his impairments were not severe.  (TR. 221).

J. Gary Kemberling, D.O., is the plaintiff's primary care physician.  On August 2, 2006, Dr. Kemberling completed a Lumbar Spine Medical Source Statement of Functional Abilities and Limitations.  (TR. 257-61).  Dr. Kemberling diagnosed hypertension, chronic sciatica and anxiety.  (TR. 257).  Dr. Kemberling found that the plaintiff had many limitations, as discussed more fully below.  (TR. 259-61).

## V.   DISCUSSION.

### A.  Whether the ALJ erred by finding that the plaintiff's mental impairment was "non-severe."

"The burden placed on an applicant at step two is not an exacting one." *McCrea v. Commissioner of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir. 2004). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims."  *Newell v. Commissioner of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 28 C.F.R. § 404.1521(a). The regulations define "basic work activities" to mean "the abilities and aptitudes necessary to do most jobs."  28 C.F.R. § 404.1521(b).  Examples of "basic work activities" include: "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out,

8

and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." *Id.* "Although the regulatory language speaks in terms of "severity," the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *McCrea, supra,* 370 F.3d at 360 (quoting SSR 85-28). "If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." *Newell, supra,* 347 F.3d at 546. "Any doubt as to whether this showing has been made is to be resolved in favor of the applicant." *McCrea, supra,* 370 F.3d at 360.

"The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." *McCrea, supra,* 370 F.3d at 360-61. However, within the substantial evidence framework, due to the limited function of the step two analysis, "the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." *Id.* at 360.

The plaintiff states that the ALJ erred by finding that his mental impairment was "non-severe." (Doc. 10 at 3-7).

As indicated, the plaintiff was examined by psychologist Dr. Sallade in February 2005. (TR. 204-212). Dr. Sallade concluded that the plaintiff can understand and retain instructions in a regular work setting, but may not be able to follow instructions due to a limited attention span. (TR. 207). She opined that the plaintiff could not sustain attention to perform simple repetitive activities in a regular work setting and could not tolerate the stress and pressures of work at that time. (TR. 207). Dr. Sallade noted that the plaintiff

9

performed activities of daily living, but not on a sustained basis, and his social functioning was adequate, though he tended to become overly self-conscious in public.  (TR. 207).

Dr. Sallade found that the plaintiff's concentration and task persistence were low average. (TR. 208). The plaintiff completed tasks slowly, performing consistently for ten minutes and then requiring an hour rest. (TR. 208). The plaintiff responded to stress appropriately, but also felt sad and worthless in response to stressful situations. (TR. 208).

On the Medical Source Statement, Dr. Sallade found that the plaintiff was extremely limited in the ability to respond appropriately to work pressures in a usual work setting.  (TR. 211).  The plaintiff had marked limitations in the ability to carry out detailed instructions, make judgments on simple work-related decisions, interact appropriately with the public, supervisors and co-workers, and respond appropriately to changes in a routine work setting.  (TR. 211).  The plaintiff had moderate limitations in the ability to understand and remember detailed instructions and slight limitations in the ability to understand and remember short, simple instructions and carry out short, simple instructions.  (TR. 211).

The vocational expert testified that if the plaintiff had the limitations assessed by Dr. Sallade, he would not be able to sustain competitive employment.  (TR. 296-97).

The ALJ noted that Dr. Sallade found that the plaintiff was polite and cooperative with normal speech, had good eye contact, appropriate mood, average intellectual processes, normal memory, good social judgment, average test judgment, and there was no evidence of obsessions, phobias or suicidal/homicidal thoughts. (TR. 17).  The ALJ accorded very little weight to Dr. Sallade's opinion, finding that her opinion in the Medical Source Statement was not consistent with the unremarkable findings in her consultative

10

examination.

The ALJ also noted that, although the plaintiff was prescribed BuSpar,[3] he has never been referred to a psychiatrist or psychologist and has never been hospitalized on a psychiatric basis.  (TR. 17).

The ALJ found that the non-examining DDS physician's assessment was consistent with a finding that the plaintiff did not have a severe mental impairment.  (TR. 17, 221).  As stated, Dr. Lanunziata evaluated the plaintiff's conditions pursuant to Listing 12.04 and found that the plaintiff's impairments were not severe.  Dr. Lanunziata never examined the plaintiff, he reviewed the medical evidence, thus his opinion has less weight than it would have if he examined or treated the plaintiff.  *See Wier v. Heckler*, 734 F.2d 955, 963 (3d Cir. 1984) (the opinions of doctors who never examined the claimant had "less probative force, as a general matter, than they would if they had treated or examined" the claimant) (citing *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)).

The plaintiff has set forth evidence to establish that his depression significantly limits his ability to do basic work activities, so as to survive the *de minimis* screening standard at Step Two. *See Newell, Id.*

### B.  Whether the ALJ erred by rejecting the opinions of the treating physicians.

The plaintiff's second argument is that the ALJ erred by rejecting the opinions of Dr. Kemberling, Dr. Tolan and Dr. Lin.  (Doc. 10 at 7-12).

An ALJ must accord treating physicians' reports great weight, especially

---

[3]

BuSpar is an anti-anxiety medication used to treat symptoms of anxiety, such as fear, tension, irritability, dizziness, pounding heartbeat and other physical symptoms.  *See Drugs.com* at http://www.drugs.com/buspar.html*.*

"when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991); *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986). When the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason*, 994 F.2d at 1066). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield*, 861 F.2d at 408; *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983).

The ALJ considered the opinions of Drs. Kemberling, Tolan and Lin. (TR. 18-20). Dr. Tolan examined the plaintiff in November 2004 and ultimately concluded that the plaintiff could work as a delivery driver. (TR. 113-14). The ALJ found that Dr. Tolan's opinion that the plaintiff could return to his past relevant work as a delivery driver exceeded the plaintiff's residual functional capacity. (TR. 19). Substantial evidence supports the ALJ's finding that the plaintiff was more limited than Dr. Tolan's assessment.

As stated, Dr. Kemberling, the plaintiff's primary care physician, completed a Medical Source Statement on August 2, 2006. (TR. 257-61). He

found that the plaintiff could sit and stand for thirty minutes at a time, could sit, stand and walk for less than two hours in an eight-hour workday and would require walking around during the day with a sit/stand option. (TR. 259-60). He found that the plaintiff could frequently lift and carry less than ten pounds, occasionally lift and carry up to twenty pounds and never carry fifty pounds. (TR. 260). Dr. Kemberling also found that the plaintiff can never bend or twist. (TR. 261). He opined that the plaintiff's impairments would produce both "good" and "bad" days and his impairments would cause him to miss work more than three times per month. (TR. 261). The ALJ stated that Dr. Kemberling's opinion that the plaintiff is totally disabled is not supported by the laboratory or clinical findings. (TR. 19). The defendant notes that Dr. Kemberling's examination findings were generally unremarkable and do not support of finding of disabled.  (Doc. 11 at 14).

The ALJ does not demonstrate how Dr. Kemberling's opinion is based on limited clinical findings.  *See Plummer,* 186 F.3d at 429 ("The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects.").  *See also Wier*, 734 F.2d at 961 (The ALJ must explicate the analysis upon which he bases his ultimate decision, especially where he is rejecting the testimony of the claimant's treating physician or allegations of intractable pain) (citations omitted). The ALJ instead accords great weight to the opinion of the DDS physician. (TR. 19). However, the ALJ does not demonstrate how the DDS physician's one-time assessment is based on greater clinical findings than  the opinion of treating physician Dr. Kemberling.

The ALJ also stated that Dr. Kemberling is a family practitioner and that the plaintiff's orthopedic surgeon, Dr. Lin, found that the plaintiff was only temporarily disabled.  However, the plaintiff states that the ALJ misinterpreted Dr. Lin's statement by stating that Dr. Lin only gave the plaintiff a "temporary period of disability."  (TR. 19) (Doc. 10 at 10).  Dr. Lin actually stated that he

supported a finding of disability "for a limited period of time." (TR. 120). As indicated above, Dr. Lin examined the plaintiff on several occasions. In December 2004, Dr. Lin stated that surgery likely would benefit the plaintiff, however he advised that the plaintiff should avoid surgery if possible. (TR. 120). The plaintiff states that the ALJ had an affirmative duty to re-contact his doctors if there were any ambiguities. (Doc. 10 at 11). However, the ALJ failed to do so.

There is not substantial evidence to support a determination that the ALJ afforded appropriate weight to the opinions of Dr. Kemberling and Dr. Lin.

### C. Whether the ALJ failed to include all of the plaintiff's limitations in the hypothetical question.

The plaintiff next argues that the ALJ erred by failing to include Dr. Sallade's assessments in the hypothetical questions.  (Doc. 10 at 12).

A hypothetical question must include all of a claimant's impairments which are supported by the record; one which omits limitations is defective and the answer thereto cannot constitute substantial evidence to support denial of a claim.  *Ramirez v. Barnhart*, 372 F.3d 546, 553-55 (3d Cir. 2004); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).  However, "[w]e do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original).

As stated, the vocational expert stated that the plaintiff would be able to perform work as an inspector, a guard and door keeper and a bench side packager. (TR. 294-95). The vocational expert then testified that if the plaintiff had the limitations assessed by Dr. Sallade, he would not be able to sustain

14

competitive employment. (TR. 296-97). The plaintiff has set forth evidence that the hypothetical questions did not include all of his limitations as supported by the record, particularly the limitations as assessed by Dr. Sallade.

### D. Whether the ALJ failed to properly evaluate the testimony of the plaintiff's wife and pastor.

The plaintiff's last argument is that the ALJ erred by finding that Mrs. Metzger and Reverend Maister were not fully credible. (Doc. 10 at 14). An ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Similarly, the ALJ's assessment of the credibility of the plaintiff's wife and pastor must be supported by substantial evidence.

As stated, the plaintiff talks to Reverend Maister to help with his depression. (TR. 282-83, 286-89). Reverend Maister testified that the plaintiff's emotional condition had improved, however he believed that the plaintiff's physical condition worsened. (TR. 286-87). Reverend Maister stated that the plaintiff has difficulty walking and sitting through church services. (TR. 286-87). He also stated that the plaintiff appeared to be depressed. (TR. 287).

Mrs. Metzger testified that the plaintiff's physical and emotional conditions had declined. (TR. 290-91). Her testimony essentially corroborated the plaintiff's testimony regarding his pain and limitations.

The plaintiff states that the defendant failed to address the argument regarding Mrs. Metzger's and Reverend Maister's credibility in his brief. (Doc. 14 at 9-10). Instead, the defendant argued that the ALJ did not err in finding that the plaintiff was not fully credible. (Doc. 11 at 15-16). The defendant also states that the ALJ accepted that the witnesses agreed with the plaintiff, but

15

the ALJ could not find that their testimony was reasonably based on the medical evidence. (Doc. 11 at 16).

The ALJ found that Mrs. Metzger and Reverend Maister were not fully credible because they are not "trained to make exacting observations as to the types and degree of medical signs and symptoms." (TR. 20). The ALJ also noted that they are not disinterested third party witnesses. (TR. 20).

The ALJ determines what testimony to take at the hearing. *See Jozefick v. Shalala*, 854 F. Supp. 342 (M.D. Pa. April 20, 1994) (stating that the ALJ must fully develop the record by eliciting all relevant information). The ALJ considered the testimony of Mrs. Metzger and Reverend Maister but determined that their testimony was not entitled to significant weight. (TR. 20). Even if the ALJ had found that Mrs. Metzger and Reverend Maister were fully credible, they are not "acceptable medical sources," and their opinions would not be entitled to controlling weight. *See* 20 C.F.R. §§ 404.1513, 416.913 (identifying acceptable medical sources as only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). Further, the credibility of Mrs. Metzger and Reverend Maister is not critical to the outcome of the case. *See*, *e.g.*, *East v. Barnhart*, 197 Fed. App'x 899, 901 (11th Cir. 2006) (ALJ's lack of an explicit credibility finding as to the claimant's mother's daily activities questionnaire did not warrant remand because the claimant's mother's credibility was not critical to the outcome of the case).

## VI.  CONCLUSION.

Based upon the foregoing, **IT IS RECOMMENDED THAT**:

the plaintiff's appeal from the decision of the Commissioner of Social Security denying his claim for DIB and SSI benefits, (Doc. 1), be **GRANTED** in part and **DENIED** in part as noted above and that the

plaintiff's case be remanded to the Commissioner for further proceedings and consideration consistent with this report.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date**: April 18, 2008
O:\shared\REPORTS\2007 Reports\07-1191.01.hhs.wpd